**GILBERG**

v.

**STEPAN CO., et al.**

**No. Civ.A. 98–139(KSH).**

United States District Court,
D. New Jersey.

Sept. 9, 1998.

---

**356**

Christopher Michael Placitella, Wilentz, Goldman & Spitzer, Woodbridge, NJ.

Jacqueline DeCarlo, Giordano, Halleran & Ciesla, P.C., Middletown, NJ.

Michael Gordon, Gordon & Gordon, West Orange, NJ.

Katherine H. Creenan, Whitman Breed Abbott & Morgan, Newark, NJ.

## LETTER–OPINION AND ORDER ORIGINAL FILED WITH THE CLERK OF THE COURT

HEDGES, United States Magistrate Judge.

Dear Counsel:

## INTRODUCTION

Pursuant to my August 20, 1998 Order, plaintiff filed a Second Amended Complaint to specifically plead the citizenship of defendants Vernieri and O'Brien. The Second Amended Complaint alleges that both Vernieri and O'Brien are New Jersey citizens. Second Amended Complaint at 2. Since plaintiff is also a New Jersey citizen, the joinder of either Vernieri or O'Brien would destroy complete diversity between the parties. As set forth in my August 20, 1998 Opinion, diversity is the only basis for subject matter jurisdiction. Under 28 U.S.C. § 1447(e), I must determine whether joinder should be permitted or denied.

## DISCUSSION

Prior to the enactment of Section 1447(e), only indispensable parties were permitted to be joined when the effect of joinder would be to destroy diversity. *See Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1012 n. 6 (3d Cir.1987), *cert. dismissed,* 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988). Section 1447(e), however, now affords federal courts greater flexibility to allow joinder regardless of whether a party is indispensable. *Stransky v. American Isuzu Motors, Inc.,* 829 F.Supp. 788, 790 (E.D.Pa. 1993); *Carter v. Dover Corp.,* 753 F.Supp. 577, 579 (E.D.Pa.1991); 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure 2d § 3739 (Supp.1998). Section 1447(e) provides that, "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."

■ The Third Circuit Court of Appeals has yet to announce the standard to be applied when evaluating joinder under Section 1447(e). Stepan suggests that joinder should be evaluated under the test for fraudulent joinder. Resp.Br. at 28–30.[1] However,

---

1. "Joinder is fraudulent 'where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment.'" *Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 851 (3d Cir.1992) (*quoting Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d

"[v]irtually every court to address the joinder question since the enactment of § 1447(e) views the statute as ... providing for a flexible, broad discretionary approach of the type prescribed in *Hensgens [v. Deere & Co.,* 833 F.2d 1179, 1182 (5th Cir.1987), *cert. denied,* 493 U.S. 851, 110 S.Ct. 150, 107 L.Ed.2d 108 (1989) ]." *Carter,* 753 F.Supp. at 579; *see Gum v. General Elec. Co.,* 5 F.Supp.2d 412, 414 (S.D.W.Va.1998); *Sharp v. Kmart Corp.,* 991 F.Supp. 519, 526 (M.D.La.1998); *Floyd v. Tulsa Dental Products,* 1997 WL 356480, at *4 (E.D.Pa. June 24, 1997); *Wyant v. National R.R. Pass. Corp.,* 881 F.Supp. 919, 923 & n. 6 (S.D.N.Y. 1995); *Irizarry v. Marine Powers Int'l,* 153 F.R.D. 12, 14 (D.P.R.1994); *Lehigh Mech., Inc. v. Bell Atlantic Tricon Leasing Corp.,* 1993 WL 298439, at *3 (E.D.Pa. Aug.2, 1993); *but see Stransky,* 829 F.Supp. at 790–91 (applying fraudulent joinder analysis without reference to *Hensgens* ). Under *Hensgens,* a court should consider "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Hensgens,* 833 F.2d at 1182. Absent any controlling Third Circuit decision I deem it appropriate to evaluate Section 1447(e) joinder under *Hensgens. See Harrell v. Pineland Plantation, Ltd.,* 914 F.Supp. 119, 120 n. 4 (D.S.C. 1996) (Section 1447(e) joinder properly analyzed under *Hensgens* rather than under fraudulent joinder).

### Joinder of Vernieri.

▆ Stepan contends that plaintiff seeks to join Vernieri solely for the purpose of defeating jurisdiction. Stepan argues that the Joint Complaint "made no mention of ... Vernieri" and that plaintiff has "no real intention in good faith to prosecute the action" against him. Resp.Br. at 29. New Jersey practice, however, permits a plaintiff who is unaware of the actual identity of a defendant to name that defendant in a pleading through the use of "fictitious pleading." Once the defendant's identity is discovered, the real party can be substituted for the fictitious party. *N.J.Civ.Prac.R.* 4:26–4. Here, plaintiff contends that the Joint Complaint employed fictitious pleading since Vernieri's identity was unknown at the time this action was commenced and only subsequently discovered through a review of EPA documents. Mov.Br. at 28; Reply Br. at 11.

The Joint Complaint named defendants "John Doe 1 through John Doe 10" as the "fictitious names of persons ... who ... discharged or removed various chemicals on or off the Stepan Company/ Maywood site." Joint Complaint at 98. It also alleges that due to the conduct of John Does 1–10 "contaminated waste was distributed to off-site residences, to be used as ... mulch, fill, and dirt." Joint Complaint at 101. It pleads several alternative theories of recovery against John Does 1–10. For example, the Fourth Count of the Joint Complaint sounds in negligence and asserts that John Does 1–10 knew or should have known that the waste they discharged was contaminating the surface and subsurface area and would eventually enter plaintiff's property and water supply and that John Does 1–10 failed to advise, warn or otherwise take reasonable care to protect plaintiff from the danger. Joint Complaint at 107–09.

The Second Amended Complaint merely substitutes Vernieri for one of the John Does 1–10. It alleges that Vernieri "is a hauler/transporter of contaminants" and that "[c]ontaminated waste was ... distributed to off-site residences, by ... defendants, including ... Vernieri, to be used as mulch, fill, and dirt." Second Amended Complaint at 2, 6–7. It pleads several alternate theories of recovery against Vernieri, including a claim for negligence which alleges that as a result of Vernieri's "acts and omissions, extensive radiological contamination .... [and] sub-

Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991) *and Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 29 (3d Cir. 1985)). The removing party carries a "heavy burden of persuasion" in making a showing that a non-diverse party was fraudulently joined. *Batoff,* 977 F.2d at 851.

stantial chemical contamination has been detected on and around the Maywood site and in the surrounding communities;" that Vernieri "proximately caused, or negligently allowed, hazardous and toxic substances .. to be discharged into the soil;" that he "knew or should have known, that the hazardous and toxic substances discharged were contaminating the surface and subsurface area ... and would eventually enter Plaintiff's property and/or wells or water supply;" that he "failed to advise or warn Plaintiff of the dangers emanating from the discharge of hazardous and toxic substances into the soil;" that he "failed to use reasonable care to safeguard those residing on nearby premises from injury or property damages;" and that plaintiff was injured as a direct and proximate result of Vernieri's acts and omissions. Second Amended Complaint at 6–9.[2]

Plaintiff seeks to join Vernieri to substitute a after-identified real person for a previously-pled fictitious defendant. The use of fictitious pleading in the Joint Complaint indicates that, prior to removal of this action, plaintiff intended to join additional real defendants once the identities of these defendants were determined. The fact that plaintiff was unable to effect the substitution before Stepan removed does not somehow convert any subsequent effort at substitution into a joinder "for the sole purpose of destroying diversity." *Mammano v. American Honda Motor Co.*, 941 F.Supp. 323, 325

(W.D.N.Y.1996); *see Davis v. American Commercial Barge Line Co.*, 1998 WL 341840, at *2 (E.D.La. June 25, 1998) (substitution of real party for fictitious party named prior to removal indicates purpose of joinder is not solely to destroy diversity).

As for the remaining *Hensgens* factors, none weigh against joinder. Plaintiff did not show undue delay in moving to join Vernieri. Indeed, the Amended Complaint, although deficient in pleading Vernieri's citizenship, was filed less than two months after the action had been commenced. Nothing in the record indicates that plaintiff was dilatory in discovering Vernieri's identity. Nor can Stepan argue that allowing joinder and remand will cause it appreciable prejudice. Stepan was put on notice, through the Joint Complaint's use of ficticious pleading, that the need to join additional, potentially jurisdiction-destroying defendants could arise after removal. That contingency has now arisen and Stepan cannot claim that this action has progressed to a point where Stepan has a vested interest in this federal forum. No discovery has been taken by either party and no answer has been filed. Indeed, the only significant activity has involved motion practice on the issue of remand. *See Wyant*, 881 F.Supp. at 923 (absence of appreciable prejudice to defendant weighs in favor of joinder). In contrast, if joinder is disallowed, plaintiff will be forced to pursue parallel actions in State and federal court, resulting in a clear

---

**2.** Stapan contends that these allegations are insufficient on their face to state a cause of action since "[t]here is no allegation that any of these 'off-site residences' are owned by [plaintiff] or that Vernieri owes any duty to [plaintiff]." Resp. Br. at 29. Neither allegation is required for plaintiff to sufficiently plead a claim for negligence. Rule 8(a) (pleading need only to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief"); *see, e.g., Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (plaintiff need not "set out in detail the facts upon which he bases his claim;" he need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests"). Moreover, the dumping of waste directly on plaintiff's property is not the only factual allegation that could establish a causal connection between Vernieri's acts and plaintiff's harm. Plaintiff alleges that the wastes Vernieri distributed to properties within

the community caused contamination of soil and water, and that it was foreseeable that these contaminants would eventually enter plaintiff's "property and/or wells or water supply." Stepan cites no authority to demonstrate that these allegations are insufficient under New Jersey law to establish causation. Likewise, Stepan cites no authority to establish that, based on the facts alleged in the Second Amended Complaint, Vernieri would not have owed plaintiff a duty. *Cf. Michelman v. Ehrlich*, 311 N.J.Super. 57, 68, 709 A.2d 281 (App.Div.1998) (existence of a duty under New Jersey law turns on whether "plaintiff was at risk of injury by defendant's conduct and whether the imposition of a duty on the defendant will promote the policy of conforming conduct to acceptable stands of care in the future"). I therefore cannot conclude at this stage that plaintiff has failed to state a reasonable basis in fact that would support a claim of negligence against Vernieri.

waste of judicial resources. "The most logical, economical and equitable approach is to determine the respective rights and liabilities of all relevant parties *inter se* in one proceeding." *Carter,* 753 F.Supp. at 580.

After weighing the *Hensgens* factors, I conclude that the joinder of Vernieri should be permitted.[3] As Vernieri's joinder destroys complete diversity between the parties, this action must be remanded to State court. *Yniques v. Cabral,* 985 F.2d 1031, 1035 (9th Cir.1993); § 1447(e); *see* 42 U.S.C. § 1447(c) ("[i]f at any time before final judgment it appears that the district court lack subject matter jurisdiction, the case shall be remanded"). I need not consider the propriety of O'Brien's joinder, since remand is required regardless.

## CONCLUSION

For the forgoing reasons, and for the reasons stated in my August 20, 1998 Opinion, I conclude that subject matter jurisdiction over this civil action is lacking. This civil action is hereby remanded to the Superior Court of New Jersey, Middlesex County.

**SO ORDERED.**

---

**3.** Joinder would also be proper under a fraudulent joinder analysis. As explained in the main text and note 2 above, neither the allegations against John Does 1–10 contained in the Joint Complaint nor the allegations against Vernieri contained in the Second Amended Complaint are "wholly insubstantial and frivolous." *See Batoff,* 977 F.2d at 852–54 (finding of fraudulent joinder only supported when claims are "wholly insubstantial and frivolous" or "so defective that they should never have been brought at the outset").

Moreover, the fact that plaintiff has attempted to substitute Vernieri for a fictitious party and has served him with process, *see* 5/26/98 Return of Service, are both indicia that plaintiff actually intends to proceed against him. *See Abels,* 770 F.2d at 32 (to extent intent to proceed against defendant is necessary to prevent finding fraudulent joinder, it is sufficient that plaintiff attempt to substitute real defendants for fictitious ones at time remand motion brought).